996 F.2d 310
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Bill J. CORY, Plaintiff-Appellant,
v.
Max E. THOMPSON, Glen Chaloupka, Wayne Pachta, Defendants-Appellees.
 No. 92-3416.
 United States Court of Appeals, Tenth Circuit.
 June 22, 1993.
 
 Before BALDOCK and KELLY, Circuit Judges, and BENSON,* District Judge.**
 ORDER AND JUDGMENT***
 BALDOCK, Circuit Judge.
 
 
 1
 Plaintiff appeals from an adverse judgment of the district court. He challenges two particular rulings, each dismissing specific portions of his pro se civil rights/state law complaint.
 
 
 2
 Notwithstanding the overall length of the complaint, there are two uncomplicated factual incidents involved. The district court summarized these as follows:
 
 
 3
 The first dispute involves actions taken by the Republic County road crew in the spring of 1991. Plaintiff alleges that the road crew, acting under the authority and supervision of defendants, damaged a hedge fence located on plaintiff's property and also infringed on plaintiff's property by widening a road and placing a ditch on plaintiff's property. Plaintiff alleges that these actions constituted an illegal taking of plaintiff's property pursuant to the United States Constitution.
 
 
 4
 The second dispute arises from actions taken by defendants pursuant to their duties as fence viewers under K.S.A. § 29-201 et seq. Plaintiff was in a fence dispute with an adjacent landowner [who wished to leave her property unenclosed] and requested the County Commissioners of Republic County to view the disputed boundary fence pursuant to their duties as fence viewers. Plaintiff alleges that the defendants failed to properly execute their duties as fence viewers [by permitting the adjacent landowner to satisfy her obligation to secure their (undisputed) common boundary with an electric fence not previously recognized by the county as legal], resulting in injuries to plaintiff under a variety of federal civil rights theories.
 
 
 5
 IR. doc. 32 at 2-3.
 
 
 6
 After dismissing a part of the complaint objecting to certain language in defendants' fence viewing decision, the district court directed the parties to show cause why the remainder should not be disposed of on various grounds. Following briefing, the district court dismissed the taking claim arising out of the first incident as unripe under Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985), and dismissed the claims arising out of the second incident on qualified immunity grounds. We affirm.
 
 
 7
 Williamson established a two-level ripeness test for taking claims, under which "the aggrieved property owner must show first that the state deprived him of his property, and second, that the state refused to compensate him for the loss." Miller v. Campbell County, 945 F.2d 348, 352 (10th Cir.1991) (explaining Williamson, 473 U.S. at 194-97), cert. denied, 112 S.Ct. 1174 (1992). The district court noted plaintiff's failure to pursue "well established Kansas law that a property owner may bring an inverse condemnation action to obtain just compensation for an alleged taking of property," IR. doc. 32 at 3 (citations omitted), and dismissed the taking claim under the second prong of the Williamson test, id. at 3-4. Ripeness being a matter of jurisdiction, see Rocky Mountain Materials & Asphalt, Inc. v. Board of County Comm'rs, 972 F.2d 309, 311 (10th Cir.1992), our review is de novo, see Redmon ex rel. Redmon v. United States, 934 F.2d 1151, 1155 (10th Cir.1991).
 
 
 8
 Plaintiff appears to be contending he is entitled to direct entry into federal court, despite his failure to seek compensation in state court, for three reasons. First, he argues that because Kansas does not have a formal, legislatively mandated inverse condemnation procedure of the sort involved in Williamson, see Tenn.Code.Ann. § 29-16-123, the two-prong ripeness test need not be satisfied. He cites no authority establishing this significant restriction on Williamson. Indeed, many cases belie such a limitation by applying Williamson where pertinent state remedies arose through judicial recognition rather than legislative enactment. See, e.g., J.B. Ranch, Inc. v. Grand County, 958 F.2d 306, 308 and n. 3 (10th Cir.1992); Samaad v. City of Dallas, 940 F.2d 925, 935 (5th Cir.1991); Executive 100, Inc. v. Martin County, 922 F.2d 1536, 1542 (11th Cir.), cert. denied, 112 S.Ct. 55 (1991); Culebras Enters. Corp. v. Rivera Rios, 813 F.2d 506, 513-15 (1st Cir.1987).
 
 
 9
 Second, plaintiff insists that even if Williamson controls, as a nonresident he may apply to federal court for the compensation he must seek from the state, pursuant to 28 U.S.C. § 1332 (diversity) or 28 U.S.C. § 1343 (civil rights). We reject this attempt to circumvent the rule that aggrieved property owners first " 'seek compensation through the procedures the State has provided for doing so.' " Samaad, 940 F.2d at 934 (quoting Williamson and holding ripeness test not met by adding requisite state claim to unripe federal taking claim) (emphasis in Samaad ).
 
 
 10
 Third, plaintiff asserts that Williamson does not bar him from asserting violations of the privileges or immunities and equal protection clauses. We need not decide this question, because no such violations were properly pled in connection with the first incident. See Franklin v. United States, No. 92-6056, slip op. at 13 (10th Cir. May 5, 1993) (inadequately pled claim irrelevant to jurisdictional disposition of case). The privileges or immunities clause is not even mentioned in this regard. See IR. doc 1 at 16-20. The equal protection clause is invoked in general terms, but the only potentially relevant factual allegation, i.e., that defendants' conduct showed a "lack of respect" for nonresident landowners, id. at 19, does not assert the intentional discrimination that is the sine qua non of an equal protection claim. See Willhauck v. Halpin, 953 F.2d 689, 712 (1st Cir.1991); Dickens v. Missouri ex rel. Ashcroft, 887 F.2d 895, 896 (8th Cir.1989); see also Snowden v. Hughes, 321 U.S. 1, 10 (1944) (purposeful discrimination not alleged by application of opprobrious term, such as "malicious," to defendant's conduct).
 
 
 11
 Turning to the second ruling, the district court dismissed the claims arising out of the fence viewing decision because plaintiff failed to demonstrate that the alleged illegality/unconstitutionality of defendants' conduct was clearly established under existing law. Plaintiff contends that, by introducing the qualified immunity issue in a show cause order, the district court impermissibly disregarded defendants' obligation to plead this affirmative defense. See Siegert v. Gilley, 111 S.Ct. 1789, 1793 (1991). However, because plaintiff raised no such objection in the district court, this procedural issue is waived. See United States v. Dewitt, 946 F.2d 1497, 1499 (10th Cir.1991), cert. denied, 112 S.Ct. 1233 (1992).
 
 
 12
 As to the merits, we agree plaintiff did not demonstrate a clearly established constitutional violation to defeat qualified immunity, but we note a more fundamental problem. Despite invoking constitutional guarantees, he essentially challenged only the correctness of defendants' decision under state law. That is not a matter subject to federal review. See, e.g., Johansen v. City of Bartlesville, 862 F.2d 1423, 1427 (10th Cir.1988) (federal claim cannot be based "entirely on alleged violations of municipal and state law"); International Harvester Co. v. City of Kansas City, 308 F.2d 35, 38 (10th Cir.1962) ("error in the administration of state law ... is not a matter of federal judicial cognizance"), cert. denied, 371 U.S. 948 (1963).
 
 
 13
 Presumably relying on his alternative assertion of diversity jurisdiction, plaintiff argues he may recover on the alleged state law violations under Kan.Stat.Ann. § 29-202 (penalty and consequential damages for fence viewer's unreasonable neglect of statutory duties). However, he did not allege defendants neglected their duties; he alleged they performed them incorrectly. Thus, his claim is governed instead by Kan.Stat.Ann. § 29-304, which states that the fence viewers' resolution of disputes over fencing obligations is "final, conclusive and binding." The statute does not provide for judicial review or a cause of action in state court for a disappointed party. A federal court sitting in diversity is bound by these same restrictions. See Hackbart v. Cincinnati Bengals, Inc., 601 F.2d 516, 522 (10th Cir.), cert. denied, 444 U.S. 931 (1979).
 
 
 14
 The judgment of the United States District Court for the District of Kansas is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 *
 Honorable Dee V. Benson, District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 **
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 ***
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3